# SUPREME COURT

OF THE

## STATE OF ARKANSAS,

AT THE

## MAY TERM, 1879.

---

COLLINS, TRUSTEE, VS. WASSELL.

| 34 | 17 |
|----|----|
| 68 | 397 |

1. MARRIED WOMAN: *May mortgage or sell her property for husband's debts.*

  The rule that a wife can charge her separate estate only for its, or her personal benefit, does not prevent her from mortgaging or selling it absolutely for her husband's debts. She is for most purposes, in equity, a *femme sole*, as to her separate property, when not restricted by the deed of settlement, in terms or by implications equivalent to express provisions.

2. SAME: *Need not acknowledge assignment of rents.*

  She may assign or transfer rents and profits accruing to her under a deed of trust, without conforming to the requirements and formalities prescribed for the alienation of real property.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*M. Collins*, for appellant.

*Wassell & Moore*, for appellees.

2

TURNER, Sp. J. The original bill states, that on the thirteenth day of September, 1867, Noah H. Badgett, conveyed to his son, William B. Badgett, certain real estate situate in the city of Little Rock, and described as lots No. five (5) and six (6) and part of lot No. four (4) constituting a part of what is known as the Badgett Block, in trust, first: to rent or lease the same and to take and collect and receive the rents, issues and profits, and out of the same to keep the premises in good order and repair, and properly insured, and pay all taxes and assessments and charges that might be legally imposed thereon. And in trust, secondly, to pay the residue of such rents, issues and income, to Lucetta S. Badgett, wife of the said Noah H., and mother of the said William B. Badgett, upon her sole receipt, free from the contract and liability of her then or future husband. And it was further provided that upon the death of the said Lucetta S., the trust thereby created, should be deemed executed, and the said real estate, divested of the trust, belong in fee simple to the children and heirs at law of the said Lucetta S.

That on the fifteenth day of March, 1870, the said trustee died, and that no successor was appointed until in March, 1876, previous to which time Lucetta S. Badgett filed a bill in the Pulaski chancery court against her heirs, setting forth that there was a large amount of taxes then due upon the houses and lots; that she had no funds to pay the same, and that the whole was about to be sold. The matter was submitted to the direction and control of the chancellor, who ordered and superintended the sale of one of the lots to save the balance.

On the eleventh day of March, 1876, the chancellor appointed Charles S. Collins, trustee in place of William B.

Badgett, deceased, and on the twenty-ninth of May, follow-
ing, he filed the bill under consideration in behalf of his
*cestui que trust,* and himself as trustee, against the said John
Wassell; the objects being to have an account taken of the
rents and profits of the trust estate, it being alleged that
the same had been improperly taken and diverted from the
purpose of paying taxes and charges on the trust estate,
and by the said Wassell appropriated to his own use, on a
claim of a debt alleged to be due him from Noah H. Bad-
gett and his wife, the *cestui que trust,* whereby the necessity
arose of applying to the court of chancery for an order to
sell a part of the property to save the residue, and to com-
pel a return of the misapplied rents, or an appropriation of
them to the benefit of the *cestui que trust,* by crediting them
on certain notes held by the said John Wassell by assign-
ment of E. Darwin Ayres, secured by a vendor's lien on
certain other real estate, it being the homestead of the said
Lucetta S.

That on the twelfth day of July, 1872, the defendant,
representing that it was for the benefit of her separate
estate, induced the said Lucetta, the *cestui que trust,* to join
her husband Noah H. Badgett, in the execution of a certain
promissory note, payable to the defendant, for $1,000, due
January 1, 1873, with interest at the rate of twenty-four per
cent. per annum, and at the same time, as security therefor,
to assign the rents, issues and profits of the trust estate to
the said defendant, which note and assignment are exhib-
ited with, and made part of, the bill.

That, contrary to said representations, no part of said
$1,000 note was for the benefit of the separate estate of the
*cestui que trust;* that the true nature of the transaction was
concealed from the said *cestui que trust;* that, instead of be-

ing executed and delivered in consideration of a present advance for the benefit of her separate estate, said promissory note was made to embrace and take up certain previously-existing claims in favor of the defendant and the firm of Wassell & Moore, and against Noah H. Badgett.

That again, on the fifteenth day of April, 1874, the defendant induced the said *cestui que trust* to join in a certain other promissory note for $1,523.80, and to secure the same, induced her to make a certain other assignment of the rents and profits of the trust estate with power to collect the same after the note matured, which said last note and assignment are exhibited with and made part of the bill.

That notwithstanding at the time of the execution of said note and assignment, the defendant represented to said *cestui que trust* that the same was for an advance then made to her for the benefit of her separate estate, such representations were mainly untrue. That in fact the said sum of $1,523.80 was made up as follows: $554.55 was for interest on the first note for $1,000 three times compounded at the rate of 24 per cent. per annum. The sum of $429.25 was to take up a note of Noah H. Badgett to defendant, also bearing 24 per cent. interest per annum given in consideration that said defendant had discharged a certain judgment against him, and the balance of $540 was advanced in good faith and paid out on taxes against the trust estate for the year 1873, but that $300 of this amount was returned to the defendant by the said Noah H. in a few days, leaving the balance of $240 as the real amount advanced for the benefit of the *cestui que trust.* The note for $1,523.80 was due on the first day of October, 1874, with interest at the rate of 2 per cent. per month from date until paid.

The last assignment has the following clause: "This

assignment has no relation to one of date of 12th of July, 1872, which is still unpaid and in full force in all things. This being for a further advance." That the defendant has collected the rents under his power down until the first day of April, 1876. An account in statement of nett receipts is filed with the bill and made an exhibit in the case.

The defendant, Wassell, answers and says: That William B. Badgett never undertook or in any manner exercised any authority whatever under the said deed of trust, but on the contrary left the whole management and direction of said trust property to the care of the said Noah H. and Lucetta S., his father and mother; they renting out and controlling the same without the intervention of any trustee or other person in any manner or for any purpose whatever. That for a period of over eight years the said Noah H. and Lucetta S. exercised and controlled the occupation and disposition of the rents of said property, made all contracts for repairs, paid all taxes due thereon, rented the property and received the rents therefor.

The defendant denies that he made any representations to the said Lucetta to induce her to execute the note and assignment of July 12, 1872, but says the loan for which the note was executed was made at her express request. That she owed Wassell & Mooré a note of $200 for professional services in a suit concerning other property of her own, and agreed that said note with interest should be included in the note for the loan. The balance was handed to the said Noah H. He denies the charge of compounding and re-compounding interest That said assignments of rents gave the defendant the right to commence collecting the rent on the first day of January, 1873, but upon the

earnest solicitation of the said Noah H. and Lucetta S. the defendant allowed them to continue to collect the rents until July 31, 1874, when defendant commenced collecting only upon a small portion of the rents assigned. That on or about the first day of April, 1874, the said Noah H. and Lucetta S. again made application to defendant for a further loan of money to enable them to live and to prevent their personal property from being sold under execution, saying to defendant that it had taken all their ready money to pay taxes and subsist upon, and that they had to assign the rents already assigned to him, to Fletcher & Walker, and asking defendant to indulge them further in carrying out their plans and permit said Fletcher & Walker to receive the rents to the amount of $1,500.

That to help them in their troubles, defendant agreed to make further advances to pay off a certain judgment referred to by them; that he did pay off said judgment and protected their property from execution and sale, and permitted Fletcher & Walker to take the rents for the payment of money advanced by them to pay the taxes for 1872.

That upon said agreement and request a *second* note and assignment of rents to secure the same was made on the fifteenth day of April, 1874, and payable on the first day of October, 1874. That the statement in the bill that the defendant represented to the said Lucetta S. that the same was for advances then made for her separate estate is absolutely untrue in every particular, but says she conferred freely with him about her business and requested the loan as a favor she could obtain from no one else. He denies that any part of the interest account on the first note was included in the second, but says there was included a certain other joint indebtedness due the defendant upon an entirely

different matter which Badgett and wife desired to discharge.

Admits the payment to him of $300 by Noah H. Badgett, but says it was applied to his personal and private account; that no credit therefor was entered on either note, nor was it requested. That the said Noah H. had a running account with defendant entirely different from their joint dealings. That this defendant has collected, after great trouble and expense, on his assignment of rents, about two-thirds of the amount due him, leaving a large amount still due, which the trustee refuses to pay. That in renting and controlling the buildings and stores the defendant by agreement never had any control, that having been alone by the said Noah H. and Lucetta S. That while the defendant was collecting rents the said Noah H. and Lucetta S. were making large bills with the respective tenants, which was taken out of the rents due on assignment. At their earnest request this was permitted in their straitened circumstances to help them along in their trouble about their money matters.

That in January, 1876, a statement of the accounts connected with the assignment of rents was made out by Mrs. Badgett's son, a competent accountant, which was satisfactory to him and to her.

And defendant denies that the account of rents, marked exhibit " D," to the bill of complaint is true, in any of its parts or statements.

There is a demurrer to the bill, on account of multifariousness in the joinder of separate and distinct causes of action.

Prayer for an account of what may be due defendant on the notes, and money received by him for rent, and that the balance be paid him out of rents to be received by the trustee, and be made a lien on the property.

By way of cross bill, the defendant adopts and reiterates the allegations and statements contained in his answer; and says that the money for which the note for $1,000, dated the 12th July, 1872, and the note for $1,523.80, dated the 15th April, 1874, was advanced and paid by defendant to the said Lucetta S., was for her benefit, and at her instance and request, and in relation to matters concerning her separate estate, and that the said notes and assignment of rents as a security therefor, were given by the said Lucetta S., with a full knowledge of the facts connected with the same. That there is a large balance justly due the said Wassell. That the said Lucetta S. has only a life estate in the property described in the deed of trust. That the husband, Noah H. Badgett, is insolvent, and that in case of the death of said Lucetta S., defendant could have no hope of realizing any part of the amount which he claims is justly due him on said notes. That the trustee is proceeding to collect the rents, and refuses to pay the same to defendant; and that Collins also is insolvent, who he prays may be enjoined from paying over any of the said rents to his *cestui que trust*, or otherwise disposing of them, until his debts be fully satisfied.

On the ninth of April, 1877, this cause was submitted to the court, and on the 18th of June following the chancellor decided " that the two notes, and the assignment of rents in this cause involved, are so far valid as to amount to directions for the appropriation of the rents and profits of the trust property received by defendant Wassell, and that said notes are entitled to credits for the several sums of rent so received at the respective dates, without any diminution for commissions, less amount of insurance paid on trust property by defendant, Wassell; and in addi-

tion, the first note for $1,000 is entitled to a credit for the interest of the first year; and the second note, for $1,523.80, is entitled to credit for $300, of the date of the payment by N. H. Badgett, of $500 in State scrip."

Whereupon a reference of this cause was made to the clerk of the court as master, to state an account of the said notes and credits in accordance with the principles announced by the chancellor, giving credits in conformity with the laws regulating partial payments, until the first note be extinguished, then passing any balance to the credit of the second note, until the whole be paid or the rents become exhausted, less the amount of insurance on the trust property paid by said Wassell, allowing the notes to continue to bear interest at the rate expressed on their face; and if there be an excess of rents over the balance of the notes, such excess to bear six per cent. interest from the date of their receipt.

Subsequently the special master made a report accompanied by a detailed account and statement, which was made a part thereof, from which it appears that the first note executed by Badgett and wife, for $1,000, dated July 12, 1872, and bearing interest at 24 per cent. per annum, had been fully paid, as follows:

First—By allowing of one year's interest, or by computing interest thereon from July 12, 1873, instead of from July 12, 1872, and rents collected by Wassell on the trust property after allowing the insurance paid by him out of the first rents collected.

Second—The second note for $1,523.80, dated April 15, 1874, and bearing 24 per cent. interest per annum, had been fully paid off, as follows: By credit of $300, for State scrip, and collections of rents from the trust estate

by Wassell, leaving due to Badgett, over and above the two notes referred to, $384.53, as shown by the account and statement accompanying the report.

Exceptions were filed to the master's report by the plaintiffs and the defendant, all of which were overruled by the court.

And it was further ordered that the directions of the court to the master be so modified as to compute the interest upon the excess down to the date of the decree in cause No. 735; and as so modified the report of the master was in all things confirmed.

In the further progress of this cause (No. 733), on motion of complainants, it was consolidated with cause No. 735, a suit brought by the said John Wassell against the said Lucetta S. Badgett and Noah H. Badgett to enforce a vendor's lien on certain real estate in the complaint mentioned.

The material allegations of the complaint in suit No. 735 are, that on the twenty-eighth day of January, 1871, E. Darwin Ayres, who was the owner of lots No. 1, 2, 3, 4, 5 and 6, in block No. 43, west of the Quapaw line in the city of Little Rock, sold the aforesaid lots to the said Lucetta S. Badgett, for the sum of $9,288 in cash, and the further sum of $2,212, evidenced by five promissory notes of the said Noah H. Badgett, husband of the said Lucetta S.—two of which notes are for $500 each, dated January 28, 1871, and bearing interest at the rate of 25 per cent. per annum from date, and payable ten months after date.

Two of which notes were for the further sum of $500 each, bearing date January 28, 1871, with interest at the rate of 18 per cent. per annum from date, and payable

twelve months from date; and one note for $212, bearing date January 28, 1871, with interest at the rate of 8 per cent. per annum from date, and payable twelve months after date. Copies of the notes are exhibited with and made part of the bill of complaint.

That the said Ayres, at the date aforesaid, by deed conveyed to the said Lucetta S. Badgett the said real estate, reciting therein the terms of sale, the payment in cash, and the five (5) promissory notes mentioned, for the unpaid balance of the purchase money, and retaining a *lien* on the land for the unpaid balance of the purchase money. A copy of the deed of conveyance is exhibited with and made part of the bill of complaint.

That the said notes, and all right, title and interest of the said Ayres, have been assigned to the said Wassell for a valuable consideration, and are now held and owned by him. The deed of assignment is also filed with, and made part of, the complaint.

That one of said $500 notes was paid and surrendered to said Badgett before the remaining four notes were assigned to Wassell. That the defendant entered into and remained in possession of said lands.

That no part of said notes so assigned have been paid, except the sum of $865, which appears by indorsements on the said notes. Plaintiff prays judgment against the defendants for the amount due on said notes, with interest and costs of suit; that plaintiff's lien as vendor may be enforced in respect of said lands, and that, if the judgment be not paid by a short day, that the equity of redemption to said real estate may be forever barred and foreclosed, and the same sold by a commissioner, etc., and that the proceeds of such sale, after paying the costs of suit, be

applied to the payment of the amount found to be due on said notes, etc.

The said Lucetta S. Badgett, answered, admitting the purchase of the lots, as alleged in the complaint, and the execution of the promissory notes of the said Noah H. Badgett, for a part of the purchase money, and of the assignment of the notes to the plaintiff, as alleged in the complaint.

Denies that but $865 of said notes in the hands of the plaintiff have been paid, and alleges that they have long since been paid off and discharged, and should be surrendered up for cancellation, etc.

The residue of the answer is in the nature of a cross-bill:

And sets up, by way of defense to bill No. 735, the substance of her allegations contained in bill No. 733, which, according to the view we take of the case, it will not be necessary to repeat here.

Noah H. Badgett answered, admitting the purchase of the lots by the said Lucetta S. from the said Ayres, as described in said complaint, and that the assignments were as alleged therein.

The plaintiff, Wassell, answered the cross-bill of the said Lucetta S., but it is in substance a repetition of the facts and statements contained in his answer to the original bill, No. 733.

On the thirtieth day of June, 1877, the consolidated causes, No. 733 and No. 735, were heard upon the bill and answer and the proofs and exhibits in cause No. 733, and upon the bill and answer and cross-bill, and answer thereto and exhibits to the papers in cause No. 735, and upon the report of the master in cause No. 733.

Whereupon the court found that the notes and assign-

ments of Lucetta S. Badgett, of July 12, 1872, and of April 15, 1874, were fully paid and satisfied on the first day of February, 1876, and that there was in the hands of said Wassell, on that day, $1,628, which, with additional rents received by him from said trust property, amounted, on the first day of April, 1876, to $356.28, which the court directed to be applied as credits on the notes of Noah H. Badgett, sued on in cause No. 735, at the dates when received by the said Wassell, in such manner that the same shall first go to extinguish the first note, which is a lien on lots Nos. 1, 2, 3, 4, 5 and 6, in block No. 43, W. Q. L., in the city of Little Rock, which first note bears interest at the rate of 25 per cent. per annum, and that the remainder, if any, upon the remaining notes of said N. H. Badgett, which are a lien upon said lots of said L. S. Badgett, which bear 18 per cent. interest per annum.

And the court found that, after applying the credits provided for, there was still due upon the last of these notes of N. H. Badgett (the first one bearing 25 per cent. interest per annum, having been discharged), the sum of $2,232, allowing all the credits provided for.

And thereupon the court decreed that the notes and assignments of the said Lucetta S. Badgett, of the twelfth July, 1872, and of April the 15th, 1874, are fully paid off and satisfied, and that the same be delivered up to the clerk for cancellation, and that the plaintiff recover from the defendant, in cause No. 735, his costs down to the order for consolidation, etc.; and that the plaintiff, Wassell, in cause No. 735, recover judgment against the defendant, Noah H. Badgett, in said cause, the sum of $2,232, with costs, and that said sum bear interest from the date of the decree, at the rate of 10 per cent. per annum, and that

sum be declared a lien upon said lots Nos. 1, 2, 3, 4, 5 and 6, in block No. 43, W. Q. L., in the city of Little Rock.

And it was further decreed that, unless the said sum of $2,232 be paid within ninety days from the entering of the decree, with interest and costs. of suit, that the equity of redemption of the said defendants, and all persons claiming under them, to said lots of land, be forever barred and foreclosed, with order to sell, etc.

The plaintiffs in the original suit, No. 733, excepted, and took an appeal to this court.

The evidence in this cause is voluminous, and, to some extent, contradictory, but sufficiently clear and consistent, we think, to lead us to correct conclusions.

There is no question made about the execution of the deed of trust, nor the purposes for which it was made, nor as to the rights of the parties under it.

And there is no question about the execution by the said Noah H. and Lucetta S. Badgett, of the note for $1,000, nor of the note for $1,523.80, nor of the instruments of writing purporting to be assignments of the rents and profits of the trust property to secure the payment of the notes.

But the record presents the question distinctly, as to the powers of a married woman to charge or dispose of her separate property, to secure the payment of her husband's debts, and the further question as to the validity of the assignment.

The deed of trust provides that the trustee, out of the rents and profits, shall keep the premises in good order and repair and properly insured, and pay all taxes and assessments legally imposed upon the same, and the residue of said rents and profits were to be paid over to the said

Lucetta S., upon her sole receipt, to the intent and purpose that she might enjoy, possess and have the same free from the control, interference and liability of her present or any future husband.

The deed of trust is in the nature of a settlement, and invests the *cestui que trust* with a separate estate in the rents and profits of the property described in the deed of trust, and this without express restrictions on her power to dispose of the same.

According to the English doctrine, the right of a married woman to dispose of her separate property, in the absence of specific restraining provisions in the settlement, is well settled. *Peachy*, who is quoted extensively by *Bishop*, says: "Even where trustees have been interposed, unless their assent is rendered necessary by the instrument which gives the wife the property, she may bind it without the trustees; for their assent not being required, their dissent cannot have any effect."

"Indeed, from the moment in which a wife takes personal property to her sole and separate use, from the same moment she has sole and separate right to dispose of it; for upon being once permitted to take personal property to her separate use as a *femme sole*, she takes it with all its privileges and incidents, including the *jus disponendi.*"

See *1 Bish., sec. 849, 850. Peachy, Mar. Set., 260, 264, and authorities there referred to.*

The doctrine of the American courts is not uniform on this subject. The decisions of some of the state courts conforming to, and of others departing more or less widely from, the English decisions; yet we think the tendency of the judicial mind, in most of the states at this time, is to favor restrictions and limitations on the right of a married woman to dispose of her separate property.

Cases affecting the power of a married woman over her separate estate have been, on several occasions, before this court.

In the case of *Stillwell and wife v. Adams and others, executors,* MR. JUSTICE WALKER, in delivering the opinion of the court, after quoting the English rule, said : "While this rule has been sanctioned and adopted in the states of Connecticut, Maryland, North Carolina, Missouri, Florida and Georgia, the states of New York, Vermont, Wisconsin and New Jersey limit the power of contracting, to contracts in relation to her separate estate, or for the benefit of such estate. By this rule the wife's general engagements, which have no reference at the time to her separate estate, cannot be enforced against said estate." *2 Perry on Trusts, sec. 660.*

The court continues quoting from Perry : "In a majority of the United States a more limited rule was applied, and the contracts of married women were not enforced against their separate estates unless their contracts were made in relation to their estates, or for their personal benefit." *2 Perry, sec. 680.*

The court further said : "It will be perceived that the point of difference between the decisions of the courts of the several states is, that part of them have adopted the rule as held by the English courts, which gave validity to the wife's contracts, which had no reference to her separate estate ; whilst others have limited the right of the wife to contract alone with regard to her separate estate, made for the benefit of her estate, or for her personal benefit. To the correctness of this more restricted right to contract, we yield our assent." *29 Ark., 346.*

The rule then adopted by this court, in the case of *Stillwell and wife v. Adams et al., executors,* is that which

"*limits the right of the wife to contract alone with regard to her separate estate, to contracts made for the benefit of her separate estate, or for her personal benefit.*"

And this rule is recognized and approved by this court in the case of *Henry v. Blackburn, 32 Ark., 445,* and in the case of *Collins and Barton, administrators, etc., v. Underwood,* decided at the present term of this court.

Does this rule affect the right of a married woman to dispose of her separate property to secure the payment of her husband's debts? We think not.

This court has never expressly decided that a married woman can mortgage or otherwise dispose of her separate estate to secure the payment of a husband's debts, because the question has never legitimately arisen for our decision. Although in the case of *Stillwell and wife v. Adams et al., executors,* it seems to be assumed that such power exists.

But it has often been decided in other American states that a married woman can mortgage or charge her separate property to secure the payment of her husband's debts, and that equity will enforce against her separate estate, her mortgage, or other express contract, evidenced by an instrument in writing, whether made for the benefit of herself, or the sole benefit of another.

JONES, in his Treatise on Mortgages, says: "The mortgage of a married woman upon her property, given to secure the debt of her husband, but taken by the mortgagee in good faith and without fraud on his part, will seldom, if ever, be set aside, even on proof that her husband procured her execution of it by fraudulent representations."

See *1 Jones on Mort., sec. 113; 15 Gray (Mass.), 328; 3 Johns (N. Y.) Chan., 144; 4 Barber (N. Y.), 407; 1 Hals.*

(*N. J.*) *Chan.*, *465*; *41 Iowa*, *44*; *33 Mich.*, *410*; *52 Ala.*, *456*; *44 Md.*, *108*; *44 Md.*, *632*; *51 Miss.*, *329*; *65 Ill.*, *170*. See also *1 Wash. on Real Property*, *314*.

If, then, a married woman can mortgage or otherwise charge her separate estate to secure the payment of her husband's debts, can not she sell or dispose of it absolutely for the same purpose?

For most purposes, the wife is to be regarded in equity as a femme sole, as to her separate estate, when the deed of settlement does not in terms, or by implication equivalent to an express provision, impose restraints upon her.

The deed of trust in this case imposes no restrictions upon the wife, but leaves her free to dispose of the rents and profits as she may think proper; and this, we think, she could well do, provided it is evidenced by an instrument in writing, showing clearly a purpose on her part to dispose of such rents and profits.

The said Lucetta S. Badgett had no interest in the real estate described in the deed of trust, except the rents and profits, to the extent and for the purposes indicated in the settlement.

The execution of the written assignments by the *cestui que trust* is not questioned. These assignments clearly transfer to Wassell so much of the accruing rents and profits of the real estate described in the deed of trust, as may be sufficient to pay the debts intended to be secured by said assignments, with authority to Wassell to collect the same, and apply such rents and profits to the payment of said debts.

The transfer of the rents and profits to Wassell, is coupled with a power, whereby he is constituted the agent of the *cestui que trust*, to collect and appropriate such rents and

profits; and the assignments may be assimilated to an order in favor of Wassell, simply authorizing him to collect and apply the accruing rents and profits to the payment of the debts.

The rents and profits of said real estate thus transferred to the said Wassell, do not carry to him the entire interest of the *cestui que trust* in such rents and profits, but only so much thereof as may be necessary to pay the debts intended to be secured by said assignments; and such transfer of the accruing rents and profits might well be made without conforming to the requirements and formalities necessary to be observed in the alienation of real estate.

We are, therefore, of opinion, that said assignments are valid and binding in equity, and transfer to the said Wassell so much of the accruing rents and profits of said real estate as may be necessary for the payment of said debts, unless it is shown that the execution of said assignments was obtained by such false and fraudulent representations of the said Wassell as would taint the transaction with fraud, in which case equity would hold the assignments absolutely null and void.

The plaintiffs allege that the said Lucetta S. was induced to join her husband in the execution of the note for $1,000 and the assignment of the rents and profits, as security for the payment thereof, in consequence of the defendant's representations to her that the same was for the benefit of her separate estate, and that she was induced to join her husband in the execution of the note, for $1,523.80, and the second assignment of the rents and profits, to secure the payment thereof, in consequence of the defendant's representation to her that the same was for an advance then made to the said Lucetta S., for the benefit of her separate estate.

The defendant, in his answer, denies these allegations in every particular.

A great deal of evidence was taken to show that the *cestui que trust* was imposed upon, and induced by the fraudulent representations of the defendant, or others, to execute said notes and assignments; that she was in feeble health and mentally incapable of transacting business.

While some of the evidence tends to show that the said Lucetta S. labored under a misconception as to the objects and purposes of the notes and assignments, caused principally by the misrepresentations of the said Noah H. to the said Lucetta S., there is no satisfactory evidence going to show that the defendant participated in, or was cognizant of, such misrepresentations. And although the *cestui que trust* appears to have been a delicate woman, and in feeble health, yet it also appears that she was intelligent and sensible, and as capable as most ladies of attending to her own business affairs; and although her husband may not at all times have dealt fairly and truthfully with her in regard to the purposes for which the notes and assignments were executed, we must suppose, from the evidence, that she was fully informed as to the nature and extent of her husband's indebtedness to the defendant, and intended, by executing the assignments, to secure the payment of the indebtedness out of the rents and profits assigned. We must, therefore, dismiss the theory of fraud, because, as we think, not sustained by the weight of evidence; and recognize the assignments of the said Lucetta S. Badgett as binding in equity upon her separate property, and a valid transfer to the said Wassell of said rents and profits to the extent, and for the purposes, indicated in the assignments.

The only remaining questions relate to the matters of

account between the parties, about which there was some conflicting evidence. But upon a careful review of the evidence, and rulings of the court touching the matters of account between the parties, we are of the opinion that there is no error in the rulings, orders, judgments and decree of the chancellor in this cause, and we do, therefore, affirm the same in all things.

Hon. J. R. EAKIN, J., did not sit in this case.

