DESHA *against* BAKER & OTHERS.

ERROR *to Hempstead Circuit Court.*

Where a writ of attachment is levied on property, or on the indebtedness of a garnishee, a schedule of the property levied on must be attached to the return, and the return must also show that, at the time of summoning the garnishee, the Sheriff declared, in the presence of one or more citizens of the county, that he attached the debt due by him to the defendant.

In every case, this declaration, in the presence of one or more citizens, as to what is attached, is necessary; and a schedule of the property, and the names of the persons in whose presence the writ was executed, are equally necessary.

If these requisites are complied with, the debt is fixed in the hands of the garnishee, in favor of the creditor; and a recovery will protect the garnishee *pro tanto*, and may be pleaded in bar of any future action.

Merely summoning the garnishee, is no attachment of an indebtedness.

The defendants in error commenced, in the Court below, their action of debt, by petition against Robert .B. Francis, by suing out a writ of attachment from the Circuit Court, dated the 27th of June, A. D. 1840. The Sheriff returned on the writ, that he executed it, " by seizing and taking, by virtue of the within writ, a certain negro boy slave, named Bill, as the property of the within named Robert B. Francis, and as directed by the plaintiff's attorney, G. D. Royston, on the 29th day of June, 1840; and I further executed the within writ of garnishment, as within I am commanded, by reading the same in the presence and hearing of the within named T. T. Collier and H. W. Smith, in Ozan township, Hempstead county, and State of Arkansas, and then and there, in their presence and hearing, declared that I did attach all and singular the goods and chattels, lands and tenements, moneys, credits, and effects of the within Robert B. Francis; and that I did summon them to be and appear before the Judge, on the first day of the October Term, 1840, to answer what might be objected against them, this the 29th day of June, A. D. 1840; and I further executed the within summons, by reading the same in the presence and hearing of the within named Robert B. Francis, in Ozan township, &c., this 25th day of July, A. D. 1840."

At April Term, 1841, the plaintiffs filed their allegations and interrogatories, against Collier and Smith, as garnishees; and on the 5th of April, 1841, Collier and Smith filed their answer, under oath, in which they admitted that Francis held their joint note, dated December 28, 1839, payable at twelve months, on which $250 was due, the same being for five hundred dollars.

On the 19th of April, Francis appeared, and moved to quash the sheriff's return on the writ, as to the garnishees, and that he should be restored to his rights against the garnishees; and on the same day, the plaintiff in error moved for and obtained leave to interplead. He thereupon, on the same day, filed his interpleader, in which he averred, that on the 28th of December, 1839, Collier and Smith executed their writing obligatory to Francis, due at twelve months after date, for value received, for $500; and that Francis, on the 25th day of February, A. D. 1841, for a valuable and full consideration, bona fide endorsed the same to the plaintiff in error, in writing; that the same is wholly unpaid; and that when it was so assigned, the amount due thereon had not, nor had any part thereof, been attached in the hands of the garnishees, or either of them; nor was any such attachment of the same, or any part thereof, evidenced by any record or return whatever; and that Francis could therefore rightfully assign the same.

On the 14th of April, Francis' motion to quash the return was overruled, and judgment entered against him.

On the 15th of April, the plaintiffs filed two replications to Desha's interplea. The first alleged, that, long before the endorsement to Desha, to wit, on the 29th of June, 1840, the writ of attachment was executed on Collier and Smith, by reading it in their presence and hearing, at Ozan township, &c., and summoning them; concluding with a verification by the return. The second replication alleges, that the indebtedness of the garnishees to Francis was *attached* on the 20th of June, 1840, with a verification by the return.

To the first replication Desha demurred; and to the second he took issue. The Court overruled the demurrer, and, on inspcting the return, decided that the indebtedness was attached, and rendered judgment on the second issue against Desha. Judgment was accordingly entered against the garnishees, in favor of the plaintiffs below.

PIKE, for plaintiff in error:

The first question presented by the record is, whether *summoning* a garnishee merely, binds a debt in his hands, so that the person to whom he owes it has no longer any control over it?

The second question presented by the record is, whether the indebtedness of the garnishees to Francis, upon their bond to him, was so attached, that a subsequent assignment of the bond, by Francis to Desha, was inoperative? If the indebtedness was legally attached, then the judgment of the Court below may be sustained.

The solution of this question is to be sought in the construction of certain provisions of Chapter 13 of the Revised Statutes. By the provisions of that chapter, the plaintiffs may, upon complying with certain pre-requisites, issue a writ of attachment, containing a triple mandate, commanding the sheriff, first, to attach the defendant by his goods, chattels, &c., no matter in whose hands found; second, to summon the defendant; and third, to summon every person in whose hands or possession the goods, &c., are found, and particularly every such person as shall be named in the writ by the request of the plaintiff. Upon making a certain affidavit, he may have a clause of capias against the garnishee.

The manner of attaching the defendant's goods, chattels, lands, tenements, *credits*, or effects, is provided by section 8. It is to be "by the officer going to the place where, or the person in whose hands or possession, the goods or effects are supposed to be, *or to the person who is supposed to be indebted to the defendant*, and then and there, in the presence of one or more citizens of the county, declaring that he attaches the same."

From the time of this service, the property, money, or effects, so attached, remain in the officer's hands or possession, and must be by him secured, to abide the event of the judgment of the Court.

The summons to the defendant and garnishee is to be served as in other cases. The capias against the garnishee is to be served by taking his body.

By section 16 it is provided, that when property or effects of any description are attached in the hands of a garnishee, they may be

released, and remain in his possession, on his giving bond.  And by section 17, in case of a debt attached in his hands, his body is to be released from custody, on his giving a like bond.  By section 18, in the same cases mentioned in sections 16 and 17, if he has been taken with a capias, he may be released, on giving bond.

If, therefore, the garnishee has in his possession any visible and movable property of the defendant, when there is no clause of capias, the property is attached by the officer's going where the property is, and declaring, in the presence of a citizen, that he attaches it.  He then takes it in possession, and reads the writ to the garnishee  If the garnishee wishes to retain the possession of the property, he gives bond.  But when a debt or indebtedness is to be attached, the officer goes to the garnishee, declares that he attaches the debt, and, as it is intangible, and he cannot otherwise secure it to abide the event of the suit, the statute requires him to take the body of the garnishee, releasing it only on the execution of a bond.

If it be contended that the officer can only take the body of the garnishee where there is a clause of capias, then it must be admitted that section 17 is useless and absurd.  It is true that section 18 is inaccurately worded; but it is the true rule of construction, to make every provision of the statute stand, if practicable.  Sections 16 and 17 show what is to be done where either visible property or a mere indebtedness is attached; and section 17 defines what shall be the course where the garnishee is taken with a capias, instead of being summoned.  It is true that where a debt is attached, the same course is prescribed, whether the process against the garnishee be a summons or capias; but neither repetition nor surplusage vitiates.  The provisions contained in the three sections might have been more lucidly arranged, and more briefly as well as more clearly expressed; but their meaning is sufficiently obvious.

Let us then first inquire whether the mere summoning of a garnishee is sufficient, in such a case as the present, to affect his indebtedness by bond, so that the defendant can no longer assign the bond—in other words, whether *summoning* the garnishee is attaching the debt, for this is the issue presented by the demurrer.

Such a debt is to be attached by the officer going to the person

indebted, and declaring, in the presence of one or more citizens, that he attaches the debt, and by securing it so as to abide the event of the suit. Whether it is necessary also to take the body of the garnishee, is not material to be inquired into, as far as the demurrer is concerned; for the naked fact set up in the replication demurred to, is, that the garnishees were summoned.

The proceeding in such case is two-fold. Every attachment with garnishee is a double suit—against the defendant and against the garnishee. The Court can only obtain jurisdiction as against a defendant, by the service of personal process, or some other method pointed out by law. In proceeding by attachment, the jurisdiction is obtained by service *in rem*. If no property of, or indebtedness to the defendant is found and attached, the Court takes no jurisdiction of the defendant, and its proceedings are invalid. Hence, in order to lay a basis for the jurisdiction as against the defendant, his property or credits must be attached. Having obtained this jurisdiction, and not before, the Court then obtained jurisdiction as against the garnishee, by summoning or taking him.

The jurisdiction as against the garnishee, is collateral to and dependent on that as against the defendant. The defendant's rights cannot be affected, unless he has actual or constructive notice of the proceeding. What shall be constructive notice, is fixed only by statutory enactment. In this case, it is the attaching of his property; and the mere summoning of a garnishee is no notice, either actual or constructive, to the defendant.

The second issue presents the same questions. The plaintiff alleged that the indebtedness was attached, which allegation he undertook to maintain by the return. The return does not sustain it. It fails to show, either that the indebtedness was declared by the sheriff to be attached, or that the bodies of the garnishees were taken. The declaration would not, in our apprehension, be an attaching of the debt. The indebtedness must be secured by the officer. Certainly this object would not be attained either by summoning the garnishee, or by declaring the debt to be attached. The garnishee could depart beyond the jurisdiction, and the debt would follow him; and this consideration shows that the construction for which we contend is correct.

65

Could the jurisdiction of the Court depend upon the volition of the garnishee? If the defendant's property is attached, and *in custodia legis*, and subject to the process of the Court, the Court has jurisdiction, and enforces its judgment against the property. But if by a fiction of law, declaring a debt to be attached, is to be taken as an actual levy and seizure, will the Court still retain jurisdiction, when the indebtedness, which is the basis of the jurisdiction, has accompanied the person of the garnishee beyond the limits of the State? The only ground on which the jurisdiction can be sustained, is, that the Court has laid its hand on the property of the defendant, and will subject it to the claims of the creditor; for it is this property, and this alone, which is operated on by the judgment. Thus Story says, that the existence of the property so seized or attached within the Territory, constitutes a just ground of proceeding, to enforce the rights of the plaintiff, to the extent of subjecting such property to execution upon the decree or judgment. *Conf. of Laws*, 461. It naturally results, that if the Legislature intended to effect this end, they would provide that the Court should be enabled to hold and keep within its jurisdiction the property or indebtedness attached. For, unless such power were given to the Court, the exercise of its jurisdiction would be a futile act.

So again he says, that if the defendant does not appear and contest the suit, it is to be treated, to all intents and purposes, as a mere proceeding *in rem*, and not as personally binding on the party as a decree or judgment *in personam*—it only binds the property seized or attached in the suit. *ib.* Thus, the jurisdiction in Scotland is said to be acquired by arresting the defendant's goods, *and so fixing them in the Territory*. 3 *Burge's Comm. on Col. and For. Law*, 1016, 1019, cited in *Conf. of Laws*, 2d ed., p. 462.

So Story says again, that in this class of cases, we are especially to bear in mind, that to make any judgment effectual, the Court must possess and exercise a rightful jurisdiction over the *res*, and also over the person, at least so far as the *res* is concerned; otherwise, it will be disregarded. *Conf. of Laws*, 496.

We do not question that the Legislature had the power to declare, as has been done in other States, that summoning the garnishee should

Desha *against* Baker and others.

be taken and considered as an attachment of the property and credits of the defendant. But we contend that no such declaration has been made; that our statute has fixed but one method of attaching in case of indebtedness, and but one where property is found; and that no jurisdiction can be obtained, except in the precise method pointed out by the statute.

TRAPNALL and COCKE, *Contra:*

If the service of the garnishment binds the property in the hands of the garnishee, so that the debtor cannot assign, transfer, or alien it, and thereby vest the legal title in another, nor the garnishee part from the possession or custody of it without becoming responsible therefor, then the Court very properly overruled the demurrer; for the matter alleged in the first replication would be a good bar to the claim set up in the interpleader. That such is the fact, we think manifest from both the letter and spirit of the statute.

The Court will find, upon examining the form of the writ prescribed by our statute, that the clause of attachment, of garnishment, the summons to the defendant and garnishee, are all blended together, forming component parts of one entire writ, called an attachment. Each part has its appropriate office to fulfil; and all are designed and framed to attain one common object, by different means, shaped so as to meet the various exigencies that may arise in practice. It is evident from the statute, that the clause of attachment was designed for those cases alone in which the property and effects of the absent or absconding debtor were known and ascertained, so that the sheriff could levy upon and take them into actual possession. This is manifest from the 9th, 16th, and 19th sections; the first of which provides, that the "property, money, or effects attached, shall remain in the officer's hands or possession, and be by him secured, to abide the event of the judgment of the Court. The second points out the means by which the property or effects attached in the hands or possession of a garnishee, may be released from the attachment, and remain in his possession. The last provides that the officer executing the writ, shall, on making his return, accompany it with a schedule of the property attached. These sections clearly indicate that the attachment

must be levied upon some specific and ascertained property, so that the officer can identify and take it into his possession, and annex a schedule thereof to the return which he makes upon the writ.

If the statute had stopped here, it would have fallen very far short of accomplishing the purposes it was evidently designed to answer. In practice, we know it often happens that a creditor may have just cause to believe that property, credits, or effects, belonging to the debtor, are in the hands of a third person, and yet he could not possibly know how much, or so describe and ascertain the property, as that the sheriff could levy his attachment upon it, take it into his possession, or make the return required by law.

It was to provide for such contingencies, that the statute has inserted in the writ a clause of garnishment, by which the plaintiff is enabled to compel a full and true disclosure, from the garnishee, of all the property or effects belonging to the defendant in his hands. And we maintain that the service of the garnishment binds all the property in the hands of the garnishee, as fully and as effectually as a levy of the attachment upon the property would have done. And after such service, the debtor cannot sell or assign the property, so as to vest in the purchaser or assignee a legal title. Nor can the garnishee, in such a case, deliver it up to the debtor, or to his vendee or assignee, without himself becoming responsible to the plaintiff for the value thereof.

The 26th section provides that the plaintiff "may exhibit and file allegations and interrogatories in writing, upon which he may be desirous to obtain the answer of any garnishee, touching the lands and tenements, goods, chattels, moneys, credits, and effects of the defendant, and the value thereof, in his possession, custody, or charge, or from him due and owing to the defendant, *at the time* of the service of such writ, or at any time after, or which may thereafter become due."

The 27th section makes it the duty of the garnishee to exhibit and file, under his oath, full, direct, and true answers to all and singular the allegations and interrogatories, as filed by the plaintiff.

Can it be supposed that the statute designed, by these provisions, nothing more than to give the plaintiff a mere naked right of discovery? Why require the garnishee, under a penalty, to make a full disclosure

of all the property and effects of the debtor in his hands at the service of the writ, or which thereafter may have come into his possession? Why provide, as it does in the 33d section, for the trial of the truth of the answer, if the service of the writ has no other or greater efficacy than to gratify an unprofitable curiosity on the part of the plaintiff, leaving the debtor still at liberty to sell or assign the property, and the garnishee to deliver it over, without incurring any responsibility? It seems to us that these and other provisions, which we shall presently refer to, would be useless and absurd, if nothing more is obtained from them than a naked discovery. In many cases, such a discovery would be of little profit to the plaintiff, if the writ created no lien in his favor upon the property of the defendant in the hands of the garnishee at the time of its service. And it would be worse than folly in him, to go through the expensive process of compelling this discovery, if the debtor could make a valid transfer of the property, and the garnishee part with the possession with impunity, at any time after the service of the writ.

The process of attachment, with all its incidents, is based upon the supposition that the defendant is either absent from the State, or that he is about to abscond and conceal and put away his property, so as to defeat the payment of his just debts. And how, in the latter case, could he be arrested in the execution of his fraudulent purpose, if the service of garnishment created no lien upon the property, so as to detain it in the hands of the garnishee, for the benefit of the attaching creditor. Such, to our minds, is obviously the spirit and intention of the statute. And this we think is clearly manifest from the 34th and 35th sections, which expressly give to the plaintiff in the attachment an absolute and unqualified right to take judgment against the garnishee, for the amount of debts, due from him to the defendant, the moneys, and the value of the goods, chattels and effects, as discovered by his answer, and the Court is directed to award execution therefor accordingly. To what time does the discovery, by the answer here referred to, relate? Is it confined to the date of the filing of the answer, or must it refer back and embrace the whole period from the service of the writ? Evidently the latter, the 26th section, already referred to, is distinct and positive on this point.

How then, we would ask, can the plaintiff have the absolute right to take judgment against the garnishee, for the value of the goods, chattels and effects confessed by his answer to be in his possession at the service of the writ, and have execution therefor, and the debtor, at the same time, have a right to make a valid and legal transfer of the same property, to a third person, and thereby discharge the garnishee from all liability in passing it over to the assignee ? These rights are inconsistent and contradictory: both cannot exist. In the case before the Court, the answer, as well as the pleadings, shows that the note in question was the property of Francis, and the money due to him, when the garnishment was served upon Collier and Smith. The law then, as we think we have clearly shown, gives to the plaintiff in the attachment, the right to take his judgment and have execution against the garnishees for the amount by them at that time owing to Francis. And this right cannot be defeated by the subsequent transfer of the note to Desha: Suppose the garnishees, Collier and Smith, had paid the amount of the note in question to Francis, after the garnishment had been executed upon them, could they plead this payment in bar of the right of the plaintiffs to take judgment against them, for the sum admitted to be due to Francis, at the service of the writ ? Such a construction, we think, is manifestly repugnant to that portion of the Statute already referred to, which gives to the plaintiff the absolute right in such a case to take judgment against the garnishee. It is evidently the intention of the law, to detain the effects of the debtor in the hands of the garnishee, so that it may be made subject to the claim of the attaching creditor. And if the garnishee parts with the property, he does it in his own wrong, and will be compelled to answer for the value thereof to the plaintiff, out of his own estate. If then the garnishees, under such circumstances, could not, legally and rightfully, make payment of the note to Francis, how could they discharge themselves by payment to the assignee ? The right of the plaintiff, to have the property subjected to the satisfaction of his demand, had already accrued, and the defendant could not divest that right by a subsequent assignment. It is a well settled principle of law, that the assignee of a note or obligation, takes it subject to all the legal and equitable consequences, which attached to it

Desha *against* Baker and others.

in the hands of the assignor, at the time of the assignment. If the garnishees could not rightfully make payment to Francis, at the time of the assignment, they could not legally make payment to the assignees afterwards; for, by the assignment, Desha acquired just the legal right, which Francis had and nothing more; and no rights or interests, which others might have in the note or to its proceeds as against Francis, could be divested by the subsequent transfer to Desha. The matter, therefore, alleged in the first replication, is a good and sufficient answer to the interpleader, and the Court very properly overruled the demurrer.

Upon the issue joined on the second replication, the Circuit Court found that the indebtedness in the interpleader mentioned, had been attached in the hands of the garnishee: and we submit to the Court, whether the return of the Sheriff does not fully sustain this finding.

DICKINSON, J., delivered the opinion of the Court:

The only question raised by the pleadings, and upon which the parties rest their case, is, whether there was such an execution and service of the writ of attachment, upon the garnishees, Collier and Smith, as to divest Francis of his right to exercise ownership over the property. As the proceeding by attachment is an innovation upon the common law, the party claiming to avail himself of its privileges, will not be permitted to travel out of the Statute, by which it is regulated. It is a settled principle that the property of absent debtors is liable by legislation to the payment of debts. Much of the credit, which an individual obtains, is often derived from the money due to him, as they are considered liable to the payment of his debts. Thus the credit operations of the country are made safer, and commercial transactions beneficially extended. To enable us to come to a correct conclusion, we have given the whole subject a careful investigation. Although the interest of several different parties is involved in this case, yet we are not authorized to look any farther than as the facts are presented on demurrer. There is no discrepancy in the several provisions of the Statute, nor any uncertainty as to the proper course to be pursued.

If the Sheriff, to whom the writ of attachment is directed, finds

sufficient property to secure the debt as sworn to, with interest and cost of suit, he should proceed no farther. But if, in his opinion, there is still a deficiency, he is authorized and required, to summon every person, who may be in possession of any other property, or who may be indebted to the defendant, to make up such deficiency.

If lands or tenements, or other tangible and movable property be attached, not being found in the possession of any person, the writ can in such case be executed as to the former, only by the officer's going to the place, where such lands or tenements are situated: and there, in the presence of one or more citizens of the county, declaring that he attaches the same: and as to the latter, by his going to the place where the property may be found, and there making the like declaration in the same manner, and also taking such property in possession.

If a person, whether named in the writ or not, is supposed to have in his possession property of the defendant, or is supposed to be indebted to him, the Sheriff must go to such person, and make the same declaration, stating what is attached, whether property, and of what kind, or debts; and also serve upon such person, (whether particularly named in the writ of attachment or not) a summons, by reading the same in his presence and hearing, or delivering him a copy thereof. If such person is absent and the summons cannot be served personally upon him, a copy is to be left at his usual place of residence, with some white member of the family over the age of fifteen years, and informing him of the contents of the same. Still the same declaration in the presence of one or more citizens of the county as to what is attached, is necessary. And he must return with the writ a schedule of the property attached, and the names of the persons, in whose presence the writ is executed. (*Secs.* 6, 8, 11, 19, *ch.* 13, *Rev. St.*) The schedule removes any doubt as to the extent of the attachment, and by giving the names of the persons in whose presence the act is done, witnesses may, if necessary, be found to substantiate the truth or falsity of the return. If these requisites of the Statute are complied with, the attachment of a debt in such case in the hands of a garnishee, would fix it there in favor of the attaching creditor, and the debtor could not afterwards pay it over, except in

Desha *against* Baker and others.

conformity to the judgment of the Court. The attaching creditor would, in such case, acquire a lien upon the debt, binding upon all parties interested; and which the Courts would not only recognize, but the garnishee would be protected *pro tanto* under a recovery had in virtue of the attachment, and could plead such recovery in bar of any future action.

It is essential to the protection of the rights of the garnishees, as well as of the defendant, that the plaintiff in attachment should not be permitted to depart from the rules laid down in the Statute. Does the replication show that the plaintiffs below conformed to the Statute? There is no allegation that there was a schedule of the property attached; no averment, that at the time of the service of the summons on Collier and Smith, the Sheriff declared in the presence of one or more citizens of the county, that he attached the debt due by them to Francis. All of which we deem it essential for the Sheriff to have done, before the attaching creditors could acquire any lien upon the debt, or divest Francis of his right to control the writing obligatory. Having omitted to do this, we are clearly of opinion that the replication was defective in not showing a sufficient service of the writ upon the garnishees; and that, therefore, the demurrer ought to have been sustained.

Judgment reversed, and case remanded to said Court to enter judgment in favor of the plaintiff in error upon his demurrer to the first replication of the defendants in error to his interpleader, and grant the parties leave to amend their pleadings, if asked for. And for further proceedings.