## MENTE *v.* TOWNSEND.

Opinion delivered October 27, 1900.

1. INSURANCE POLICY—ASSIGNMENT—FRAUD.—A wife's assignment of her interest in a policy on her husband's life is not invalid, though procured by the husband's misrepresentation, if the assignee paid a valuable consideration for the assignment without knowledge of the fraud. (Page 396.)

2. ALTERATION—MEMORANDUM.—The addition to a written assignment of a life insurance policy, after the signatures, of the following words, "This loan of $5,000 is to be repaid upon notice of 30 or 60 days given by Mrs. S. Townsend," does not constitute an alteration of the instrument, being a mere memorandum. (Page 396.)

3. INSURANCE POLICY—MARRIED WOMAN—ASSIGNMENT.— Sand. &. H. Dig., § 4944, which provides that it shall be lawful for a married woman to cause the life of her husband to be insured, and that the amount of such insurance shall be free from the claims of her husband's creditors, does not invalidate an assignment by a married woman of her interest in a policy insuring her husband's life as collateral security for a debt of her husband. (Page 396.)

4. SAME—CHANGE OF BENEFICIARY.—Where a policy of insurance is made payable to assured's wife "subject to the right of assured to change the beneficiary," the assured may, without the wife's consent, change the beneficiary *pro tanto* by assigning the policy as security for a loan. (Page 397.)

5. SAME—ASSIGNMENT—NOTICE.—One who takes from a widow an assignment of several policies on her husband's life, payable to her and amounting to $17,000, to secure an indebtedness of the husband amounting to $5,000, and a further advance to assured of $2,000, will be held to be put upon inquiry; and if inquiry from the insurer would have led to the discovery that assured had previously assigned some of the policies to another, the assignee will be held to have had notice of such prior assignment. (Page 398.)

Appeal from Pulaski Chancery Court.

THOS. B. MARTIN, Chancellor.

*Morris M. Cohn*, for appellants.

There was no loan of $5,000. The signature of Mrs. Goldsmith was obtained by misrepresentations of her husband, appellee's agent, and the assignment is therefore void. 1 Big. Fraud, 353; 38 Ark. 428, 432; 2 Hare's Lead. Cas. Eq. 1213; 14 Ves. 273; 40 Ark. 28, 30, 31; 58 Ind. 493, 498; 18 Md. 305, 320; 78 N. Y. 68; 42 Md. 140, 153; 68 Mich. 116, S. C. 35 N. W. 853; 78 N. Y. 68, S. C. 34 Am. Rep. 50; 42 Md. 140, 152, 153; 59 N. Y. 587, 591; 18 Md. 305, 320; 58 Ind. 493. Transactions between husband and wife are *prima facie* fraudulent, and the burden rests upon the husband of rebutting the presumption. 86 Pa. St. 512; 140 N. Y. 249; 94 Ala. 530; 37 Mich. 319. An assignment of a policy, to be valid, must be made in the mode provided by the com-

pany. 3 Joyce, Ins. § 2309; 50 Me. 96; 1 Biddle, Ins. §§
280, 281. The assignment was void because of material altera-
tions in the instrument by appellee. 1 Ark. 117; 9 Ark. 122;
30 Ark. 186; 35 Ark. 146; 48 Ark. 426; 49 Ark. 40; 57 Ark.
277. The assignment by the wife of insured, during his life,
was inoperative. Her interest was a mere expectancy, as un-
certain in ultimate value as that of an heir. 2 Col. C. C. 100;
2 Swanst. 108, 139. An heir's expectancy cannot be conveyed.
9 Mass. 519; 7 Conn. 255; 40 Pa. St. 37. The assignment by
the wife was invalid. 2 De G., J. & S. 272; 9 East, 72. Cf.
59 Ark. 587; 71 N. Y. 261; 76 N. Y. 585; 86 N. Y. 11; id.
614; 100 N. Y. 372, 375; 102 N. Y. 266, S. C. 6 N. E. 667;
102 N. Y. 143, S. C. 6 N. E. 267; 115 N. Y. 152, 157; 122
N. Y. 152, 157; 122 N. Y. 337; 21 N. E. 1025, 1026; 129
N. Y. 566, 574; 140 N. Y. 457, 461; 7 So. 602; 50 La. Ann.
1027, S. C. 24 So. 16; 38 Conn. 294.

*Ratcliffe & Fletcher*, for appellee.

The wife cannot avoid the assignment merely because she
misunderstood it. There would have to be some element of
duress present. 41 Atl. 736; 29 Atl. 729; 114 Pa. St. 398;
8 Mo. App. 535; 58 Ark. 281. Appellee can not be held re-
sponsible for any misrepresentations of Goldsmith in the pro-
curement of the assignment. 114 Pa. St. 398. Goldsmith
had the right to change the beneficiary, by the terms of the
policy, and that is the legal effect of the assignment procured
by him to her. 99 Fed. 199; 60 Tex. 534; 74 Ga. 669, 670;
126 Ill. 387; 13 Daly, 255, 263; 85 N. Y. 593; 46 N. Y. 456;
12 Abb. N. Cas. 25, S. C. 28 Hun, 119; 23 Wis. 108; 19
Fed. 671; 12 Wis. 223; 9 N. W. 481. Even if there was any
defect in the form of the assignment, that was an objection of
which the company alone could take advantage; and, by paying
the money into court, it has waived such defense. 2 May, Ins.
§ 396; 53 S. W. 602; 37 N. E. 441; S. C. 161 Mass. 320; 60
N. W. 812; 48 N. E. 1090, S. C. 170 Mass. 218; 6 Pa. Dist.
Rep. 468; 43 N. Y. Supp. 649; 150 N. Y. 269. The words
claimed to have been added by appellee to the contract were
but expressive of the real contract, and not such an alteration
as would avoid it. 35 Ark. 235; 5 Ark. 643-4-7; 42 Mo.

454. The burden was on appellants to show a material altera-
tion without consent. 30 Ark. 286, 305–6; 73 Fed. 925; 2
Dan. Neg. Inst. § 1421. The wife had no indefeasible interest
in the policy. 7 Daly, 169, 173; 44 N. Y. 159. Sand. & H.
Dig., § 4944, does not apply to the case. The wife could assign
the policy. 15 R. I. 106. That the husband had the right to
assign the transfer, see: 47 Mo. 419; 47 Mo. 453; 8 Mo. App.
535; 56 Mo. App. 27; 50 Mo. 44; 23 Wis. 114; 38 Wis. 542,
546; 35 Ind. 188; 40 Ill. 402; 3 Sneed, 565; 2 Tenn. Ch. 269;
99 Ind. 478; Sand & H. Dig., §§ 489, 4945, 4946.

*Morris M. Cohn*, for appellants in reply.

Goldsmith did not change the beneficiary, and appellee must
rely upon the assignment. 57 Ark. 632. Further, upon the
invalidity of such an assignment procured by husband from
wife, see: 38 Ark. 428, 432; 58 Ind. 493, 498; 18 Mo. 305,
320; 78 N. Y. 68; 42 Md. 140, 153; 68 Mich. 116; 59 N. Y.
587, 591.

BATTLE, J.   On the 17th of May, 1896, The Equitable
Life Assurance Society of the United States executed a policy
of insurance for $3,000, and on the 13th of August issued
another policy for $2,000, both on the life of Solomon Gold-
smith, and payable to Eugenia Goldsmith, his wife, in case she
survived her husband, "or, in the event of her prior death, to
the assured's executors, administrators or assigns, subject to
the right of the assured to change the beneficiary." On the
5th of April, 1898, Solomon Goldsmith and his wife, Eugenia,
executed an assignment of these two policies to Sarah Town-
send as security for a loan of $5,000 by the assignee to the
the assured. On the 10th of June, 1898, Solomon Goldsmith
died, and on the day following Mrs. Townsend gave notice to
the general manager or agent of the insurance company for the
state of Arkansas of the assignment to her, and on the 13th of
the same month mailed a letter to the company notifying it of
the same. On the day last mentioned Mrs. Goldsmith assigned
these two policies with other policies on the life of Solomon
Goldsmith, amounting to $17,000, to Mente & Co., who on the
same day notified the company by telegram of the assignment.

Mrs. Townsend brought this action to enjoin the insurance company from paying the policies assigned to her to Mente & Co. or Mrs. Goldsmith. The company filed an answer in the nature of an interpleader's bill, and paid the amount of the policies into court, and asked that the parties claiming it be required to litigate their rights in court, and that it be relieved from further liability.

1. Mente & Co. and Mrs. Goldsmith denied that Goldsmith was indebted to Mrs. Townsend for $5,000 loaned to him by her.

2. They alleged that Mrs. Goldsmith's signature to the assignment was procured by the misrepresentations of her husband.

3. That if the $5,000 was loaned, it was at a usurious rate of interest.

4. That this assignment was altered after its execution by cutting off words at the end of the paper on which it was written, and by adding words beneath the assignment as follows: "This loan of $5,000 is to be repaid upon notice of 30 or 60 days given by Mrs. S. Townsend."

5. That the assignment by Mrs. Goldsmith was illegal.

6. That the assignment to them was superior to that of Mrs. Townsend.

The court, after hearing the evidence adduced by all the parties, rendered a decree in favor of Mrs. Townsend for the $5,000 which had been paid into court, and Mente & Co. and Eugenia Goldsmith, who were defendants in this action, appealed.

1. After a careful examination and consideration of all the evidence in the case, we find and conclude that the policies in controversy were assigned to appellee, Mrs. Townsend, for the purpose of securing the payment of the sum of $5,000 loaned by her to Solomon Goldsmith, deceased, in his lifetime. The instrument of writing adduced by the appellee at the hearing of this cause as evidence of that fact, the execution of which by Goldsmith and his wife is not denied, supports that conclusion. Other evidence, to repeat which can serve no useful purpose, corroborates that view.

2. But appellants insist that the signature of Mrs. Goldsmith was procured by her husband by means of fraud and misrepresentation. If this be so, there is no evidence that appellee was a party to this fraud, knew or had any notice of it at the time she loaned the $5,000. It was not procured by compulsion. Upon the faith of the assignment appellee loaned a large sum of money. Under these circumstances appellants cannot take advantage of the husband's misrepresentations. While the wife may avoid a fraud upon her as against all who participated therein, it is a rule that a valuable right of a creditor cannot be prejudiced by any fraud of the husband which procured the wife's security, if it was without such creditor's instigation, knowledge or consent. *Kulp* v. *Brant*, (Pa.) 29 Atl. 729; *Johnston* v. *Patterson*, 114 Pa. St. 398; Schouler, Husband & Wife, § 283.

3. Appellants contend that, if the $5,000 were loaned by appellee to Goldsmith, they were loaned at a usurious rate of interest. But we find that this was not shown by clear and satisfactory evidence. The evidence upon this point is conflicting, and the evidence adduced by the appellants was not clear or satisfactory, and therefore is not sufficient to sustain the contention.

4. It is also contended that the assignment was altered after its execution by the cutting off of words at the end of the paper on which it was written, and by adding the words, "This loan of $5,000 is to be repaid upon notice of 30 or 60 days given by Mrs. S. Townsend." There is no evidence that any words were cut off, and the words added below the assignment were no alteration, and were nothing more than a memorandum. *Walker* v. *Walker*, 5 Ark. 643, 647; *American National Bank* v. *Bangs*, 42 Mo. 454.

5. Appellants insist that Mrs. Goldsmith, being a married woman at the time the assignment was made to appellee, could not at that time lawfully assign the policies in controversy to any one. This contention is based in part upon section 4944 of Sandels and Hill's Digest, which provides: "It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee,

to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her and for her use; and in case of the death of the wife before the decease of her husband the amount of said insurance - may be made payable to his or her children, for their use, and to their guardian, for them, if they shall be under age, as shall be provided in the policy of insurance; and such sum or amount of insurance so payable shall be free from the claims of the representatives of the husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds or property of the husband shall exceed the sum of three hundred dollars." But sections 4945 and 4946 of the same digest, which were enacted at the same time the section preceding was, give a married woman the power to "bargain, sell, assign and transfer her separate personal property." We know of no statute prohibiting her from assigning any policy of insurance as a security. We see nothing in the statute relied upon which denies to her this right. But we have a statute which makes "all agreements and contracts in writing for the payment of money or property, or for both money and property, assignable" (Sand. & H. Dig., § 489); and this court has held that a wife can mortgage her separate property to secure her husband's debts. *Collins* v. *Wassell*, 34 Ark. 17; *Petty* v. *Grisard*, 45 Ark. 117. Under these statutes and other laws of this state, which vest her with all the rights of an unmarried woman as to her separate property, and make no exceptions as to policies of insurance upon the life of her husband, we can see no good reason why she cannot assign such policies as a man or single woman can transfer. *Charter Oak Life Ins. Co.* v. *Brant*, 47 Mo. 419; *Baker* v. *Young*, 47 Mo. 453; *Emerick* v. *Coakley*, 35 Md. 188; *Pomeroy* v. *Ins. Co.* 40 Ill. 402; *Kerman* v. *Howard*, 23 Wis. 108; *Rison* v. *Wilkerson*, 3 Sneed, 565; *Williams* v. *Corson*, 2 Tenn. Ch. 269.

The policies in controversy were made "payable to Eugenia Goldsmith, * * * in the event of her prior death, to the

assured's executors, administrators, or assigns, subject to the right of assured to change the beneficiary." The interest of Mrs. Goldsmith in the same, before the assignment to appellee, was an expectancy. Goldsmith, the assured, could have changed the beneficiaries in the policies at any time without her consent. He, in effect, made such change, to the extent of the assignment to appellee. *Hopkins* v. *N. W. Life Ass. Co.* 99 Fed Rep. 199; *Splawn* v. *Chew,* 60 Texas, 534; *Nally* v. *Nally,* 74 Ga. 669, 670; *Martin* v. *Stubbings,* 126 Ill. 387.

6. Appellants, Mente & Co., claim that the assignment of the policies by Mrs. Goldsmith to them is superior to that to appellee, because they had no notice of appellee's claim until after the policies had been transferred to them for a valuable consideration, and because they notified the insurance company, which executed the policies, of their claims before appellee gave notice to it of the assignment to her. The truth is, the assignment to appellee was executed long prior to the time when the policies were transferred to Mente & Co., and notice of the former was given to the general manager or agent of the insurance company for this state prior to the time when Mente & Co. gave notice of their claim. Goldsmith, in his lifetime, gave notice to the insurance company of his intention to transfer the policies to appellee; and Mente & Co. were put on inquiry before the transfer to them, which, if it had been followed up, would have led to the discovery of the assignment to appellees. Goldsmith, the assured, was indebted to Mente & Co. for about $5,000. When he died, he left no property for the support of his widow. She had policies on his life for $12,000, exclusive of the policies in controversy, and, including them, for $17,000. In three or four days after her husband's death, when she was overwhelmed by grief caused by his death, Mrs. Goldsmith, in consideration of $2,000 paid to her by Mente & Co., of which firm her son-in-law was a member, and for the ostensible purpose of paying that firm the $5,000 that her husband owed to it, transferred to Mente & Co. the policies for $17,000. These circumstances were sufficient to put a man of common sagacity upon inquiry to ascertain the reason for such an unreasonable sacrifice, which, if prosecuted with reasonable diligence, would

have led to the discovery that it was made for the fraudulent.
purpose of defeating the claim of appellee. It would have
been natural for such a person to have inquired of the insur-
ance companies if they knew of any reason why the sacrifice
should be made. This would have led to the discovery from
one that Goldsmith had given notice of an intention to transfer
to appellee, and this would have led to an inquiry of appellee,
which, if prosecuted, would have led to the discovery of the
assignment to her. But it does not appear that any such inquiry
was made. Instead of it, a notice of the transfer to Mente & Co.
was given by telegram to the insurance company, which showed
an effort to be in advance of all others in giving notice. There
would not have been any occasion for this hurry if there had
not been any fears of adverse claims. The transfer to Mente
& Co. was procured by the son-in-law of Mrs. Goldsmith, who
was a member of that firm. All these and other accompanying
circumstances, which are unnecessary to mention, indicate that
the latter transfer was made for a fraudulent purpose, and that
Mente & Co. participated. This being true, it was void as to
appellee. *Dyer* v. *Taylor*, 50 Ark, 314.

Decree affirmed.

WOOD, J., absent.