W. B. WORTHEN CO. ET AL. *v.* THOMAS.

No. 856. Submitted May 2, 1934.—Decided May 28, 1934.

*Mr. Henry M. Armistead* submitted for appellants.

*Mr. Kenneth W. Coulter,* with whom *Mr. Harry Robinson* was on the brief, submitted for appellee.

Mr. Chief Justice Hughes delivered the opinion of the Court.

Appellee, Mrs. W. D. Thomas, and her husband, Ralph Thomas, were engaged in business as copartners in Little Rock, Arkansas, under the name of Enterprise Harness Company. They became indebted for the rent of premises leased to the partnership by appellant, W. B. Worthen Company, Agent. On August 31, 1932, judgment for the amount thus due ($1,200), with interest, was recovered against both partners. Ralph Thomas died on March 5, 1933. Thereupon, on March 10, 1933, a writ of garnishment was served upon the Missouri State Life Insurance Company alleging the indebtedness of that Company to Mrs. Thomas, in the sum of $5,000, as the beneficiary of a policy of insurance upon the life of Ralph Thomas. The service of the writ, under the laws of Arkansas, created a lien upon the indebtedness.[1]

A few days later, on March 16, 1933, the Legislature of Arkansas passed an Act—Act 102 of the Laws of 1933—providing as follows:

"All moneys paid or payable to any resident of this state as the insured or beneficiary designated under any insurance policy or policies providing for the payment of life, sick, accident and/or disability benefits shall be exempt from liability or seizure under judicial process of any court, and shall not be subjected to the payment

---

[1] See *Desha* v. *Baker*, 3 Ark. 509, 520, 521; *Martin* v. *Foreman*, 18 Ark. 249, 251; *Smith* v. *Butler*, 72 Ark. 350, 351; 80 S.W. 580; *St. Louis Southwestern Ry. Co.* v. *Vanderberg*, 91 Ark. 252, 255; 120 S.W. 993; *Foster* v. *Pollack Co.*, 173 Ark. 48, 51; 291 S.W. 989.

of any debt by contract or otherwise by any writ, order, judgment, or decree of any court, provided, that the validity of any sale, assignment, mortgage, pledge or hypothecation of any policy of insurance or of any avails, proceeds or benefits thereof, now made, or hereafter made, shall in no way be affected by the provisions of this act."

Appellee, on April 5, 1933, filed a motion to dismiss the writ of garnishment and for the purpose of scheduling the money owing to her by the Insurance Company as being exempt from seizure under judicial process. On April 6, 1933, the Insurance Company answered the garnishment, admitting its indebtedness. The court then ordered the payment of $2,000 into its registry as sufficient to cover appellant's claim and released the garnishee from further liability. Appellant responded to the motion to dismiss the garnishment, and to the claim of exemption, by insisting that Act 102 of the Laws of 1933, if so applied, contravened Article I, section 10, of the Constitution of the United States by impairing the obligation of appellant's contract. The court of first instance, overruling that contention, and holding the insurance moneys to be free from all judicial process, dismissed the garnishment and granted the schedule of exemption. The judgment was affirmed by the Supreme Court of the State, 188 Ark. 249; 65 S.W. (2d) 917. The constitutional question was again urged by petition for rehearing, which was denied. The case comes here on appeal.

■ There is no question that the state court gave effect to the Act of 1933, and we are not concerned with any earlier state statute in relation to policies of insurance.[2] The debt of the wife herself, as a member of a business partnership, is involved. We have not been referred to any

---

[2] Compare § 5579, Crawford & Moses' Digest of the Statutes of Arkansas, 1921; Acts 76 and 141 of the Laws of Arkansas, 1931; *Mente* v. *Townsend,* 68 Ark. 391, 397; 59 S.W. 41; *Townes* v. *Krumpen,* 184 Ark. 910, 913; 43 S.W. 1083.

statute of Arkansas, existing prior to the firm's contract and to the incurring by appellee of the debt in question, which in such a case, either by the terms of the statute or by the construction of it by the state court, precluded resort to insurance moneys such as those in question.[3] The state court has mentioned none. On the contrary, the state court recognized the greater breadth of the Act of 1933, as compared with earlier statutes, and its controlling operation, and with this recognition sustained and applied it.[4] " The only question," said the court, " for determination here is the constitutionality of Act 102 of 1933, approved March 16, 1933."

■ The exemption created by the Act of 1933, as to the avails of life insurance policies, is unlimited. There is no limitation of amount, however large. Nor is there any limitation as to beneficiaries, if they are residents of the State. There is no restriction with respect to particular circumstances or relations. "All moneys paid or payable " to any resident of the State " as the insured or beneficiary designated " under any life insurance policy, are exempted " from liability or seizure under judicial process " and " shall not be subjected to the payment of any debt." The profits of a business, if invested in life insurance, may thus be withdrawn from the pursuit of creditors to whatever extent desired. No conditions are imposed, save that assignees, mortgagees, or pledgees of policies are protected.

Such an exemption, applied in the case of debts owing before the exemption was created by the legislature, constitutes an unwarrantable interference with the obliga-

[3] As to moneys payable by fraternal benefit societies, see Act 462 of Laws of Arkansas, 1917; *Acree* v. *Whitley*, 136 Ark. 149; 206 S.W. 137.

[4] See *Wilmington & Weldon R. Co.* v. *Alsbrook*, 146 U.S. 279, 293; *McCullough* v. *Virginia*, 172 U.S. 102, 116, 117; *Houston & Texas Central R. Co.* v. *Texas*, 177 U.S. 66, 77; *Appleby* v. *City of New York*, 271 U. S. 364.

tion of contracts in violation of the constitutional provision. *Gunn* v. *Barry*, 15 Wall. 610, 622, 623; *Edwards* v. *Kearzey*, 96 U.S. 595, 604; *Bank of Minden* v. *Clement*, 256 U.S. 126, 129. Chief Justice Marshall, in *Sturges* v. *Crowninshield*, 4 Wheat. 122, 198, observed that "it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents, and integrity, constitute a fund which is as confidently trusted as property itself. Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation." This principle was applied to an exemption of insurance moneys, in relation to antecedent debts, in *Bank of Minden* v. *Clement, supra.* The argument of appellee that a judgment is not in itself a contract within the constitutional protection,[5] and that it is competent for the State to alter or modify forms of remedies, is unavailing. The judgment and garnishment in the instant case afforded the appropriate means of enforcing the contractual obligations of the firm of which appellee was a member and the statute altered substantial rights. *Gunn* v. *Barry, supra; Edwards* v. *Kearzey, supra; Fisk* v. *Jefferson Police Jury,* 116 U.S. 131, 134; *Home Building & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 430.

■ The Legislature sought to justify the exemption by reference to the emergency which was found to exist. But the legislation was not limited to the emergency and set up no conditions apposite to emergency relief.

We held in *Home Building & Loan Assn.* v. *Blaisdell, supra,* pp. 434, *et seq.,* that the constitutional prohibition against the impairment of the obligation of contracts did not make it impossible for the State, in the exercise of its essential reserved power, to protect the vital interests

---

[5] See *Morley* v. *Lake Shore & M. S. Ry. Co.,* 146 U.S. 162, 169.

of its people. The exercise of that reserved power has repeatedly been sustained by this Court as against a literalism in the construction of the contract clause which would make it destructive of the public interest by depriving the State of its prerogative of self-protection. We held that this reserved protective power extended not only to legislation to safeguard the public health, public safety, and public morals, and to prevent injurious practices in business subject to legislative regulation, despite interference with existing contracts,—an exercise of the State's necessary authority which has had frequent illustration—but also to those extraordinary conditions in which a public disaster calls for temporary relief. We said that the constitutional prohibition should not be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood or earthquake, and that the State's protective power could not be said to be non-existent when the urgent public need demanding relief was produced by other and economic causes. But we also held that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitation, and that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. We held that when the exercise of the reserved power of the State, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familiar principle that the relief afforded must have reasonable relation to the legitimate end to which the State is entitled to direct its legislation. Accordingly, in the case of *Blaisdell,* we sustained the Minnesota mortgage moratorium

law in the light of the temporary and conditional relief which the legislation granted. We found that relief to be reasonable, from the standpoint of both mortgagor and mortgagee, and to be limited to the exigency to which the legislation was addressed.

In the instant case, the relief sought to be afforded is neither temporary nor conditional. In placing insurance moneys beyond the reach of existing creditors, the Act contains no limitations as to time, amount, circumstances, or need. We find the legislation, as here applied, to be a clear violation of the constitutional restriction.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE SUTHERLAND, concurring.

MR. JUSTICE VAN DEVANTER, MR. JUSTICE McREYNOLDS, MR. JUSTICE BUTLER and I concur unreservedly in the judgment of the court holding the Arkansas statute void as in contravention of the contract impairment clause of the Federal Constitution. We concur thus specially because we are unable to agree with the view set forth in the opinion that the differences between the Arkansas statute and the Minnesota mortgage moratorium law, which was upheld as constitutional in the *Blaisdell* case, are substantial. On the contrary, we are of opinion that the two statutes are governed by the same principles and the differences found to exist are without significance, so far as the question of constitutionality is concerned. The reasons set forth in the dissenting opinion in the *Blaisdell* case, and the long line of cases previously decided by this court there cited, fully support this conclusion. We were unable then, as we are now, to concur in the view that an emergency can ever justify, or, what is really the same thing, can ever furnish an occasion for justifying, a nullification of the constitutional restriction

upon state power in respect of the impairment of contractual obligations. Acceptance of such a view takes us beyond the fixed and secure boundaries of the fundamental law into a precarious fringe of extraconstitutional territory in which no real boundaries exist. We reject as unsound and dangerous doctrine, threatening the stability of the deliberately framed and wise provisions of the Constitution, the notion that violations of those provisions may be measured by the length of time they are to continue or the extent of the infraction, and that only those of long duration or of large importance are to be held bad. Such was not the intention of those who framed and adopted that instrument. The power of this court is not to amend but only to expound the Constitution as an agency of the sovereign people who made it and who alone have authority to alter or unmake it. We do not possess the benevolent power to compare and contrast infringements of the Constitution and condemn them when they are long-lived or great or unqualified, and condone them when they are temporary or small or conditioned.