**TRAVELERS' INS. CO. et al. v. MARSHALL et ux.**

No. 11876.

Court of Civil Appeals of Texas. Dallas.

Sept. 15, 1934.

Renfro & McCombs and James A. Kilgore, all of Dallas, for appellants.

John Davis, of Dallas, for appellees.

JONES, Chief Justice.

This is an appeal from a temporary writ of injunction, granted under the 1934 Moratorium Law (Acts 1934 [2d Called Sess.] c. 16 [Vernon's Ann. Civ. St. art. 2218b note]), restraining the sale of real estate to satisfy a deed of trust lien, in a suit instituted to obtain such relief, by appellees, Schuyler B. Marshall, Sr., and wife, the lien debtors, against Leslie Waggener, trustee in the deed of trust, which was executed in 1926 by Schuyler B. Marshall, Sr., and his wife, to secure a loan to appellees, originally in the sum of $125,000, made by the Travelers' Insurance Company, which company is made a party defendant to this suit, and the Republic Trust & Savings Bank became a party defendant by intervention.

Appellees' verified petition is sufficient under the provisions of chapter 16, p. 42, of the Acts of the Second Called Session of the Forty-Third Legislature, known as the 1934 Moratorium Law (Vernon's Ann. Civ. St. art. 2218b note), to secure the relief of the temporary writ of injunction, under the provisions of said law, restraining the threatened sale of the land by the trustee, under the terms of the deed of trust, and sufficient to authorize the trial court to grant ex parte the temporary restraining order, and also is a sufficient basis for the hearing of evidence to sustain the allegations, at a later hearing,

of which appellants had received due notice, and had answered appellees' claim to the right for such relief; and, further, that the evidence offered by appellees at this hearing was sufficient, under the terms of said law, to authorize the injunctive relief, provided said law is a valid legislative enactment.

The court fixed the rental value of the land involved to be $2.50 per acre, from the date of hearing to February 1, 1935, the date on which the temporary writ of injunction expires, by its own terms, and also the date on which the law terminates. It was ordered that the amount of the rental value of the land be paid into court before September 1, 1934, and that, unless such payment is made, "this injunction will be dissolved and of no further force and effect after said date of September 1, 1934."

No question is raised that, at the time the trustee posted the notices of the sale of appellees' land, the right existed to declare all of the indebtedness due and at once payable, amounting to $146,012.74, including attorney's fees, interest, and taxes, as well as the balance due on the principal, and that, but for the terms of said law and of appellees' invoking the rights given thereunder, no legal right existed in appellees to prevent the sale of the land. The sole question at issue on this appeal, therefore, is the validity of the 1934 Moratorium Law. The 1934 Moratorium Law does not differ materially from the 1933 Moratorium Law (Acts 1933, c. 102 [Vernon's Ann. Civ. St. art. 2218b]), and it is admitted by appellants that, in so far as this case is concerned, there is no substantial difference in the two enactments.

After a rather lengthy preamble, declaring the existence of facts, which show that the great financial distress that existed at the time of the enactment of the 1933 Moratorium Law also existed at the time of the enactment of this law, as a purely temporary measure, for the immediate relief of a distressed citizenship from economic causes.

Section 1 of the law under consideration (Vernon's Ann. Civ. St. art. 2218b note), among other things, authorizes district courts to grant writs of injunction, "restraining the sale of real property under powers created by Deeds of Trust or other contracts and to restrain sales under executions and orders of sale issued out of any Court in this State, when it shall be made to appear by verified motion or petition or from evidence adduced upon a trial on the merits or on ex parte or preliminary hearing," that certain enumerated facts must exist, and that certain other enumerated facts must not exist, in order for a lien debtor to obtain the injunctive relief. The petition alleges all the affirmative facts enumerated in section 1, and denies the existence of any of the negative facts so enumerated.

Section 3 (Vernon's Ann. Civ. St. art. 2218b note) provides, in part, that: "The Court shall determine the reasonable rental value of said property and shall direct and require such mortgagor or debtor to pay all or a reasonable part of such income or rental value into or toward the payment of the indebtedness owing and the court shall further direct and require such payments to be made at such times and in such manner as shall be fixed and determined by the order of the Court as under the circumstances may be deemed equitable and just, and that the Court shall direct that such rental payment be applied to the payment of taxes, insurance, interest, and to the mortgage indebtedness in the order named."

Section 7 of the act (Vernon's Ann. Civ. St. art. 2218b note) reads: "The motion for continuance or for stay of execution or the petition for injunction shall be addressed to the sound discretion of the Trial Court and the action of the Court in refusing to grant any such relief as herein authorized shall not be final and shall be assigned as error on appeal." There are other important provisions in the 1934 Moratorium Law that we do not deem necessary to set out or discuss.

The constitutionality of the 1933 Moratorium Law was before this court, in the case of Lingo Lumber Co. v. Hayes, 64 S.W.(2d) 835, and, after a careful consideration of its constitutionality by this court, it was pronounced constitutional. Later a very similar Moratorium Law from the state of Minnesota was before the Supreme Court of the United States, in the case of Home Bldg. & Loan Ass'n v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, and the validity of the Minnesota law was upheld in a very exhaustive opinion by Chief Justice Hughes, speaking for the majority of the court.

We consider these cases, and the authorities they cite, as conclusive of the instant case, and so hold.

In the Lingo Lumber Company Case, supra, it was claimed that the law was invalid, because of the prohibition in the Federal Constitution (article 1, § 10) against the power of a state Legislature to impair the obligation of a contract, and also was invalid because of the prohibition in the Constitution of the

state of Texas (art. 1, § 16), forbidding the state Legislature to impair the obligation of a contract. In the instant case, appellants do not invoke the provision of the Federal Constitution, but rely upon the prohibition in the state Constitution (article 1, § 16), and insist that a different question is presented by the contract clause in our state Constitution than that presented by the contract clause in the Federal Constitution (article 1, § 10). This contention will require a discussion of the question thus raised.

In a recent case by the Supreme Court of the United States, W. B. Worthen Co. v. Thomas, 292 U. S. 426, 54 S. Ct. 816, 818, 78 L. Ed. 1344, Chief Justice Hughes, writing the opinion in that case, states the effect of the holding of that court in the case of Home Building & Loan Ass'n v. Blaisdell, supra, as follows: "We held in Home Building & Loan Association v. Blaisdell, supra, page 434 et seq. of 290 U. S., 54 S. Ct. 231 [78 L. Ed. 413, 88 A. L. R. 1481], that the constitutional prohibition against the impairment of the obligation of contracts did not make it impossible for the State, in the exercise of its essential reserved power, to protect the vital interests of its people. The exercise of that reserved power has repeatedly been sustained by this Court as against a literalism in the construction of the contract clause which would make it destructive of the public interest by depriving the State of its prerogative of self-protection. We held that this reserved protective power extended not only to legislation to safeguard the public health, public safety, and public morals, and to prevent injurious practices in business subject to legislative regulation, despite interference with existing contracts—an exercise of the State's necessary authority which has had frequent illustration—but also to those extraordinary conditions in which a public disaster calls for temporary relief. We said that the constitutional prohibition should not be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood or earthquake, and that the State's protective power could not be said to be nonexistent when the urgent public need demanding relief was produced by other and economic causes. But we also held that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitation, and that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. We held that when the exercise of the reserved power of the State, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familiar principle that the relief afforded must have reasonable relation to the legitimate end to which the State is entitled to direct its legislation. Accordingly, in the case of Blaisdell, we sustained the Minnesota mortgage moratorium law in the light of the temporary and conditional relief which the legislation granted. We found that relief to be reasonable, from the standpoint of both mortgagor and mortgagee, and to be limited to the exigency to which the legislation was addressed."

An analysis of the opinion in the Lingo Lumber Company Case, supra, shows that the same construction was placed by this court on the contract clause in the Federal Constitution as was placed on such clause by the United States Supreme Court in the Home Bldg. & Loan Ass'n Case.

In reference to the prohibition in our state Constitution against the impairment of the obligation of a contract, this court believed, and in effect held in the Lingo Lumber Company Case, that such clause should not be construed so as to render the legislative branch of our state government powerless to enact a temporary relief measure, when faced with a great economic emergency, which threatened ruin to the public, provided such measure protected the creditor, both in the indebtedness owing and in any dissipation of the security held, during the reasonable time he was forbidden to exercise his contract right of enforcing his lien against his security; in other words, we held that the contract clause in our state Constitution did not deprive this state of its inherent prerogative of self-protection. To give to such clause in our Constitution the construction contended for by appellants would have the effect of declaring that, in the stress of such a great economic emergency, our Constitution would cease to be a protection to the public and, on the contrary, would become an instrument which might work to the ruin of the public and the downfall of the state.

We therefore overrule this contention of appellants and hold that the contract clause in our state Constitution should be given the same construction as the contract clause in the Federal Constitution, and

further hold that the 1934 Moratorium Law is valid, and that the trial court did not err in granting the temporary writ of injunction.

It follows that the case should be affirmed, and it is so ordered.

Affirmed.