JUSTICE NELSON
concurs.
¶67 I concur in our Opinion except for certain parts of the discussion in ¶¶ 44, 45 and 48.
¶68 Basically, I agree with the State’s argument and interpretation of paragraph 7 of the agreement, and I disagree with our conclusion that the passage of 1-137 resulted in a substantial impairment of the Venture’s contractual relationship with the State.
¶69 As noted, paragraph 7 provides that the Venture shall fully comply with “all applicable state and federal laws, rules and regulations, including but not limited to those concerning safety, environmental protection and reclamation.” For the Venture to say that it never agreed to be bound by laws which would completely ban *333 the use of the cyanide heap leaching process flies in the face of paragraph 7. Indeed, the Venture did, in fact, agree to be homid-without limitation-by all applicable laws, rules and regulations including those protecting the environment. If the Venture signed the agreement with qualifications, exceptions or caveats in mind, it had the obligation to disclose those to the State and to negotiate the contract terms accordingly.
¶70 Furthermore, I disagree with our conclusion that the Venture could not reasonably have anticipated 1-137. The mining industry is one of the most heavily regulated industries in the State and has been for years. This regulation has, for the most part, become stricter over the years, due in no small measure, to environmental disasters resulting from poor mining practices, failed technology, failed economics, and taxpayers becoming increasingly fed up with having to pick up the pieces in the form of millions upon millions of dollars in clean up costs. The Court’s apparent adoption of the statement that “cyanide heap leaching has been shown to be safer than other methods” to the contrary, the people of this State have twice exercised their collective judgment and have soundly rejected that notion. In this frame of reference, I am hard put to join the Court’s conclusion that the passage of 1-137 should have or did, in fact, come as any great surprise.
¶71 Finally, the federal Contracts Clause, Article I, Section 10-after which our own Article II, Section 31 is modeledwras historically adopted and construed with a focus on legislation designed to repudiate or adjust pre-existing debtor-creditor relationships that obligors were unable to satisfy. Keystone Bituminous Coal Ass’n v. DeBenedictis (1987), 480 U.S. 470, 503, 107 S.Ct. 1232, 1251, 94 L.Ed.2d 472 (citations omitted). As we note, notwithstanding its facially absolute language, the federal Contracts Clause has long been interpreted so as to accommodate the inherent police power of the State ‘to safeguard the vital interests of its people.” Home Bldg. & Loan Ass’n v. Blaisdell (1934), 290 U.S. 398, 434, 54 S.Ct. 231, 239, 78 L.Ed. 413. The clause is not read literally. W.B. Worthen Co. v. Thomas (1934), 292 U.S. 426, 433, 54 S.Ct. 816, 818, 78 L.Ed. 1344. Moreover, ‘tojne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.” Hudson County Water Co. v. McCarter (1908), 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828.
¶72 Here, the State leased a mineral estate to the Venture and, with that, the opportunity to go through the expensive, lengthy, highly *334 regulated process to apply for and, maybe, obtain a permit to mine. There was no guarantee that this process would be successful anymore than there was any guarantee that the mining venture itself would succeed. The State did not repudiate its agreement with the Venture. Rather, and leaving aside its other problems, it was the Venture that, in an increasingly strict regulatory environment, determined to mine using a process that was unacceptable to the people of Montana.
¶73 The Contracts Clause must accommodate the inherent police power of the State. Here, that power was exercised by the people pursuant to Article II, Sections 1 and 2 and Article III, Section 4, to prohibit a mining process which they collectively determined posed unacceptable risks to the environment and to their rights under Article II, Section 3 and Article IX, Section 1.
¶74 While I agree with most of our Contracts Clause analysis and with the result thereof, I do not concur with the statements in ¶¶ 44,45 and 48, aforementioned, nor do I agree that the Venture suffered a substantial impairment of contract as a result of the passage of 1-137.
¶75 With those qualifications, I concur.